COMMONWEALTH vs. CHARLES D. DAGLE.

Middlesex.     January 7, 1963. — March 4, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL,
& REARDON, JJ.

*Sex Offender. Constitutional Law,* Sex offender, Double jeopardy. *Practice, Civil,* Sex offender.

After a psychiatrist, under G. L. c. 123A, § 6, had made a preliminary examination of a prisoner at a penal institution and report to the officer having custody of the prisoner, the psychiatrist was not disqualified from participating in an examination and diagnosis of the prisoner at a treatment center pursuant to a temporary commitment under §§ 6, 4, nor did those sections require more than one other psychiatrist to participate in such examination and diagnosis.   [540–541]

Following pleas of guilty to indictments for certain offences stated in G. L. c. 123A, § 4, a temporary commitment of the defendant to a treatment center under that section, sentencing of him to a penal institution for such offences, and service by him of a substantial portion of his sentences, he was not placed in double jeopardy by proceedings against him under § 6 culminating in his being committed to a treatment center for an indeterminate period of one day to life.   [541–542]

A finding that one was a "sexually dangerous person" within G. L. c. 123A, § 6, was warranted by evidence of repetitive misconduct with children and testimony of psychiatrists.   [542–543]

PETITION for commitment filed in the Superior Court on April 2, 1962.

The case was heard by *Hudson, J.*

*Louis M. Nordlinger* for the defendant.

*Aaron K. Bikofsky,* Assistant District Attorney (*Ruth I. Abrams,* Assistant District Attorney, with him), for the Commonwealth.

WHITTEMORE, J.   A judge in the Superior Court on April 26, 1962, found that the defendant is a sexually dangerous person, and ordered him committed to the treatment center at the Massachusetts Correctional Institution at Bridgewater, for an indeterminate period of from one day to life. G. L. c. 123A, § 6.   The defendant excepted to the denial of

a motion to dismiss and to the refusal of the trial judge to give certain rulings.

The defendant had been indicted in 1960 for indecent assault and battery upon children under fourteen years of age, unnatural acts with a child under sixteen years of age, and possession, for exhibition, of pictures that were obscene, indecent and impure. Upon his pleas of guilty and the motion of the district attorney under G. L. c. 123A, § 4, the defendant on January 16, 1961, was committed to the treatment center for a period of not over sixty days. On March 6, 1961, psychiatrists at the treatment center filed a report. The defendant was brought to court on March 16, 1961, and sentenced to three concurrent terms in the Massachusetts Correctional Institution at Walpole. In due course he would have become eligible for parole, subject to approval by the Parole Board, on March 2, 1962. The superintendent of the institution in the meantime on November 2, 1961, filed with the court a motion stating that the defendant appeared to be a sexually dangerous person and moving for his commitment to the treatment center for examination and diagnosis. On this motion the court committed the defendant for not more than sixty days as provided by G. L. c. 123A, § 6. In due course, two psychiatrists filed their reports and the district attorney filed the petition on which the order of commitment of April 26, 1962, was made.

1. The defendant excepted to the denial by the trial judge of a request to rule that G. L. c. 123A requires that a prisoner be examined by three psychiatrists before a commitment may be ordered. The judge rightly denied the request. Section 6 provides that if a prisoner appears "to be a sexually dangerous person and in need of . . . care and treatment" the officer having custody of him "may notify the commissioner of mental health, who shall thereupon cause such prisoner to be examined by a psychiatrist at the institution wherein he is confined." If the psychiatrist's report "indicates that such person may be a sexually dangerous person," the officer transmits the report to court

and moves for the temporary commitment. The commitment, by § 6, is "under the provisions of section four in so far as may be applicable." Section 4 provides for commitment "for a period not exceeding sixty days for the purpose of examination and diagnosis under the supervision of not less than two psychiatrists who shall, within said period, file with said court a written report of such examination and diagnosis, and their recommendations for the disposition of such person. The court shall supply to the examining psychiatrists copies of the court record, and the probation officer shall supply them with the probation record of the person committed for examination. The probation record shall contain a history as [*sic*] such person's previous offences and previous psychiatric examinations and such other information as may be helpful to assist such psychiatrists in making their diagnosis."

The defendant contends that the statute was violated because one of the two psychiatrists who reported after the temporary commitment had also made the preliminary report. There is nothing in this. The statute plainly does not expressly require that three different physicians have a part nor that a physician be disqualified because of his preliminary examination. There is no implication of such a requirement in the statutory purpose. The preliminary report serves to give good ground for initiating the proceedings and is insignificant thereafter. The statutory purpose then is that the judge have the benefit of the report and recommendations of two psychiatrists who have adequate basis for their conclusions. Previous acquaintance of a reporting psychiatrist with the prisoner serves this purpose.

2. The judge rightly denied the defendant's motion to dismiss on constitutional grounds, and his requests which raised the same issues. There is no aspect of double jeopardy. The defendant is not being subjected to a second, or any, penalty for the offences for which he was convicted.

The proceedings are not penal. *Commonwealth v. Page,* 339 Mass. 313, 316–317, and cases cited. *Commonwealth v. Ackers,* 343 Mass. 63, 68. It is immaterial that a judge

might have committed the defendant in 1961 rather than sentencing him. The statute in § 6 has made provision for the examination of a person reasonably suspected of being a sexually dangerous person. It is inconsequential that he is then serving a sentence for sexual offences and that he had previously been examined under the statute at another appropriate time. The defendant had no constitutional right not to be punished for sexual offences or to be put immediately under treatment upon conviction therefor. The statute (§ 5) permits but does not require a commitment if the convicted person is found sexually dangerous. We are not informed as to the nature of the report of the two psychiatrists in March, 1961. It is only if their report "clearly indicates" that the convicted person is a "sexually dangerous person" that the court must proceed to try that issue under § 5. "If the court finds that the person is a sexually dangerous person, it may, in lieu of the sentence required by law for the original offence, commit such person to the center . . . ." There was no adjudication in 1961 that the defendant was not a sexually dangerous person so no issue arises of the effect of such an adjudication in the absence of some new basis for a different conclusion.

The record does not permit the conclusion that the defendant is being so held and treated that in the guise of protecting society and affording the defendant medical or psychiatric treatment, he is in fact being subjected to penal treatment. Hence issues dealt with in *Commonwealth* v. *Page,* 339 Mass. 313, 317–318, do not arise. See *Commonwealth* v. *Hogan,* 341 Mass. 372, 377.

3. There was plainly sufficient evidence to support the judge's finding.[1] There was a history of low mentality and repetitive offences, some of which occurred after the defendant's release from an earlier confinement. One psy-

---

[1] G. L. c. 123A, § 1: "The words 'sexually dangerous person' as used in this chapter shall have the following meaning: — Any person whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive behavior and either violence or aggression by an adult against a victim under the age of sixteen years, and who as a result is likely to attack or otherwise inflict injury on the objects of his uncontrolled or uncontrollable desires."

chiatrist testified that the defendant in his opinion either could not control or would have great difficulty in controlling his sexual impulses, and the impulses might result in violence. The significance of his testimony is not destroyed because the witness did not answer unqualifiedly that if released under parole conditions the defendant "would . . . be likely . . . to commit an act of violence or aggression." It was apparent from his other testimony that the doctor believed the defendant was "likely to commit another" sexual offence. One kind of injury with which the statute is concerned is the establishing in boys at a formative age of unnatural habits and emotions which they may never be able to overcome. The other psychiatrist testified that the defendant is not able to control his sexual impulses and if released would be likely to attack or inflict injury. When asked on cross-examination whether he meant only "a possibility" he testified that there was a "distinct possibility" of attack and injury and also "of even more serious sexual crimes" as the defendant grows older. It was not necessary that this witness testify in the precise words of the statute. Careful physicians, by training and experience, are guarded in prognosis. The decision as to what was "likely" was for the judge. The absence of evidence that the defendant had made advances to adults while serving his sentences did not require the judge to conclude that it was not likely that the compulsive course of sexual misconduct with boys would be resumed.

*Exceptions overruled.*