COMMONWEALTH *vs.* CHARLES E. LAMB.

Suffolk.    October 9, 1973. — November 5, 1973.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Evidence,* Police records, Hearsay, Of sexual misbehavior, Sex offender, Communication between patient and psychiatrist.

Testimony by a psychiatrist in a proceeding for an indeterminate commitment of the defendant as a sexually dangerous person pursuant to G. L. c. 123A, § 6, as to the contents of various police reports regarding sexual misconduct of the defendant was prejudicial hearsay, and its admission was reversible error. [523-533]

Testimony by a psychiatrist in a proceeding for an indeterminate commitment of the defendant as a sexually dangerous person pursuant to G. L. c. 123A, § 6, as to conversations with the defendant while at a treatment center, in which the defendant had made certain admissions, was error as violative of the defendant's asserted privilege under G. L. c. 233, § 20B, to prevent such testimony; exception (a) of § 20B was inapplicable and there was no waiver of such privilege within exception (b) where there was no evidence that the defendant had been informed that his communications to the psychiatrist would not be privileged. [533-535]

PETITION for commitment filed in the Superior Court on August 11, 1970.

The case was heard by *Robert Sullivan,* J.

*Robert V. Greco & Francis John Stolarz* for the defendant.

*Thomas J. Mundy, Jr.,* Assistant District Attorney (*Kevin W. Kouri,* Special Assistant District Attorney, with him) for the Commonwealth.

GRANT, J.   These are exceptions alleged by the defendant during the course of proceedings conducted under the provisions of G. L. c. 123A, § 6 (as amended by St. 1969, c. 838, § 58), which resulted in the defendant's being committed as a sexually dangerous person to the treatment center established at the Massachusetts Correctional Institute (M.C.I.), Bridgewater, for the indeterminate statutory period of one day to life. See, generally, *Commonwealth* v. *Ackers,* 343 Mass. 63, 68 (1961); *Commonwealth* v. *Dagle,* 345 Mass. 539, 540-541 (1963), cert. den. 375 U. S. 863 (1963); *Commonwealth* v. *Peterson,* 348 Mass. 702, 704 (1965); *Commonwealth* v. *McGruder,* 348 Mass. 712, 714-715 (1965), cert. den. 383 U. S. 972 (1966), reh. den. 384 U. S. 947 (1966); *Peterson, petr.* 354 Mass. 110, 113-114 (1968).

1. The defendant was first brought into court on September 17, 1970, and the hearing which resulted in his first commitment to the treatment center for sixty days of examination and diagnosis was held on October 6, 1970. It was not until February 17, 1972, almost on the eve of the hearing on the petition brought by the district attorney for an indeterminate commitment to the treatment center, that the defendant filed a motion to dismiss the entire proceedings under G. L. c. 123A, § 6, which was accompanied by a set of requests for rulings of law. Both the motion, which was supported only by the unsworn statements of counsel, and the requests were designed to raise various constitutional questions as to the circumstances and manner in which the proceedings had been initiated by which the defendant had first been brought before the court in September of 1970. The motion was heard at the same time as the petition for indeterminate commitment. The motion and such of the requests as were brought into play by the defendant's testimony[1] or by other evidence were denied, subject to the defendant's exceptions.

---

[1] The trial judge made no findings on any of the matters testified to by the defendant. Compare *Andrews* v. *Commonwealth,* 361 Mass. 722, 725-726 (1972).

The defendant has been represented by counsel at all times since he was first brought into court,[2] and no reason has been given why the questions which are now sought to be argued were not raised at the time of the hearing on the motion for an initial commitment for sixty days. See *Peterson, petr.* 354 Mass. 110, 115-116 (1968). We have nevertheless examined the questions with care and are of opinion that all of them were decided adversely to the defendant in *Commonwealth* v. *Gomes,* 355 Mass. 479, 483-485 (1969), and *Gomes* v. *Gaughan,* 471 F. 2d 794, 798-800 (1st Cir. 1973).[3] These exceptions are overruled.

2. During the course of the hearing on the petition for indeterminate commitment Dr. Newman Cohen, a psychiatrist called by the district attorney, was permitted, subject to the objection and exception of the defendant, to testify to the contents of various police reports which had been made available to him from the records of the correctional institutions at Walpole and Bridgewater and which indicated, among other things, that the crimes for which the defendant then stood committed[4] had been perpetrated with gross sexual overtones, and stated that the defendant had stayed with a homosexual, that the defendant had previously been placed on probation for three years for the abuse of a female child, and that he had also served a six-month sentence for fathering an illegitimate child. It is clear that the trial judge's decision to commit the defendant for an indeterminate period was based in part on this evidence. Whatever the law may have

---

[2] On March 22, 1971, the court allowed a motion by counsel for the defendant for the appointment of an independent psychiatrist to examine the defendant, and for the payment of such psychiatrist.

[3] The *Gomes* cases were concerned with a defendant who, unlike the present defendant, was not represented by counsel until the time of the hearing on the question of indeterminate commitment.

[4] The district attorney's brief asserts, and the defendant does not deny, that at the time the proceedings were commenced which resulted in the initial commitment the defendant was confined as a prisoner at M.C.I., Bridgewater, pursuant to concurrent sentences of from five to seven years which had been imposed following convictions (on pleas of guilty) in 1968 of assault and battery by means of a dangerous weapon and of mayhem.

been at the time of the trial of this matter in March of 1972 (see *Commonwealth* v. *McGruder,* 348 Mass. 712, 713-715 [1965]), it is now settled that the admission of the prejudicial hearsay in police reports is reversible error. *Commonwealth* v. *Bladsa,* 362 Mass. 539 (1972). The exceptions to the admission of such evidence are sustained.

3. We turn to another question of evidence which can reasonably be expected to arise at a retrial of this matter. At the outset of the testimony of each of the psychiatric witnesses called by the district attorney counsel for the defendant advised the court that the defendant would invoke the privilege accorded under G. L. c. 233, § 20B (as inserted by St. 1968, c. 418), and asked the court to instruct the witness accordingly. The court, subject to the defendant's exception, refused to do so, and, subject to further exceptions, permitted Dr. Cohen to testify to conversations with the defendant while at the treatment center (under his initial commitment) in the course of which the defendant had admitted, among other things, the use of alcohol and drugs. That admission appears to have contributed to the witness' ultimate diagnosis of the defendant as a sexually dangerous person.

The parties are in agreement that the defendant's admissions fall within that portion of § 20B which provides that "in any court proceeding and in any proceeding preliminary thereto and in . . . administrative proceedings, a patient shall have the privilege of refusing to disclose, and of preventing a witness from disclosing, any communication, wherever made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient's mental or emotional condition." They are at odds, however, on whether one or more of the exceptions to the privilege which are set out in § 20B[5] should apply on the

---

[5] "The privilege granted hereunder shall not apply to any of the following communications: —

"(a) If a psychotherapist, in the course of his diagnosis or treatment of the patient, determines that the patient is in need of treatment in a hospital for mental or emotional illness or that there is a threat of imminently dangerous activity by the patient against himself or another person, and on the basis of such

facts of this case. The defendant argues that only exception (b) should be considered and that the privilege should be held inviolate because (as is the case) the record is barren of any evidence on which the trial judge could have found a waiver of the privilege by the defendant. See *Usen* v. *Usen,* 359 Mass. 453, 456-457 (1971). The district attorney argues that exception (a) is applicable by its terms and that no express waiver by the defendant need be shown.

The legislative history of § 20B is of no assistance in our efforts to ascertain the intended scope of exception (a).[6] The concluding clause ("or placing the patient under arrest or under the supervision of law enforcement officers") appears to contemplate a patient who is or is about to be at large, which is not the case under G. L. c. 123A, § 6, where the subject is already a prisoner under sentence and supervision at the time proceedings are commenced. See *LaMorre* v. *Superintendent of Bridgewater State Hosp.* 347 Mass. 534, 536-538 (1964). There is nothing to indicate that the Legislature intended that the undefined "hospital" referred to in (a) should be equated with or include the specialized "treatment center" required to be established by G. L. c. 123A, § 2 (as inserted by St. 1958, c. 646, § 1, and as amended by St. 1959, c. 615), and which has been the subject of careful and continuing judicial scrutiny. See

determination discloses such communication either for the purpose of placing or retaining the patient in such hospital, provided however that the provisions of this section shall continue in effect after the patient is in said hospital, or placing the patient under arrest or under the supervision of law enforcement authorities.

"(b) If a judge finds that the patient, after having been informed that the communications would not be privileged, has made communications to a psychotherapist in the course of a psychiatric examination ordered by the court, provided that such communications shall be admissible only on issues involving the patient's mental or emotional condition but not as a confession or admission of guilt. . . ." None of the other exceptions set out in the statute is of any materiality in the present case.

[6] See 1967 Senate Doc. No. 439; Res. 1967, c. 33; Forty-third Annual Report of the Judicial Council, 1967 Pub. Doc. No. 144, pp. 106-113; 1968 House Doc. Nos. 710 and 4555; St. 1968, c. 418. It is said in Fox, Psychotherapy and Legal Privilege, 53 Mass. L. Q. at 307, that our § 20B was taken from Conn. Gen. Sts. § 52-146a, inserted by Pub. Acts 1961, c. 529, but we are left in doubt as to the particular statutory context in which the Connecticut statute was intended to operate. That statute has since been supplanted by the vastly different provisions now found in Conn. Gen. Sts. §§ 52-146d et seq., as inserted by Pub. Acts 1969, c. 819, and as subsequently amended.

*Commonwealth* v. *Page,* 339 Mass. 313, 315-318 (1959); *Commonwealth* v. *Hogan,* 341 Mass. 372, 373-377 (1960); *Newton, petr.* 357 Mass. 346, 347-353 (1970). See also *Commonwealth* v. *Bladsa,* 362 Mass. 539, 542 (1972).

If the treatment center were considered to be a "hospital" for the purposes of (a), and if a psychiatrist, "for the purpose of . . . retaining the patient in such hospital" for an indeterminate period under G. L. c. 123A, § 6, should be permitted to testify to privileged communications made to him while the prisoner is undergoing sixty days of examination and diagnosis under that section, there would appear to be no reason why the psychiatrist should not also be permitted to testify to similar communications made to him by one who has already been committed under that section for an indeterminate period but who seeks to be released under one or more of the procedures found in G. L. c. 123A, § 9 (as most recently amended by St. 1966, c. 608). However, to permit such testimony in the latter type of situation would be to render entirely illusory the provision in (a) that the privilege "shall continue in effect after the patient is in said hospital."

In the opinion of the panel the only exception to the privilege granted by G. L. c. 233, § 20B, which may be applicable to proceedings under G. L. c. 123A, § 6, is that found in (b) of § 20B (fn. 5). As there was no evidence that the defendant was ever informed that the communications he might make to Dr. Cohen would not be privileged, his exceptions to the admission of such communications must be sustained.

The exception to the order of indeterminate commitment is sustained.

The matter is remanded to the Superior Court for further proceedings not inconsistent with this opinion.

*So ordered.*